UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DUWANE BARNES,

        Plaintiff,

v.

        Case No. 2:25-cv-86

        Honorable Jane M. Beckering

UNKNOWN BELLEAU et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at that facility and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues KCF Corrections Officers Unknown Belleau, Unknown Parmer, and Unknown Shields, and he sues ECF Captain/Hearing Officer Unknown Bromley, ECF Hearing Investigator Unknown Goodspeed, and ECF Grievance Coordinator T. Bassett. (Compl., ECF No. 1, PageID.2, 5, 7–10.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2, 7–11.)

In Plaintiff's complaint, he alleges that on October 15, 2024, at KCF, Defendants Belleau and Parmer issued him two class II misconducts for "interference with the administration of rules" "because Plaintiff was on the phone with his family during his yard time, [and] he was also on los[s] of privileges[1]."[2] (*Id.*, PageID.13.) Plaintiff claims that "d[ue] to Plaintiff being on [loss of

---

[1] Pursuant to MDOC policy, "all of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction:"

> A. Day room, activity room, TV room, study room, or other designated area where similar activities occur[;] B. Exercise facilities, such as yard, gym, and weight room/pit[;] C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy[;] D. Out of cell hobbycraft activities[;] E. Kitchen area, including microwave, ice machine, and hot water dispenser[;] F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards")[;] G. Movies[;] H. Music practice; musical instruments[;] I. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee[;] J. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney[;] K. Visiting[, t]his applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report[; and] L. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information).

MDOC Policy Directive 03.03.105, Attach. E (eff. Aug. 26, 2024).

[2] In this Opinion, the Court the corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

2

privileges]," Defendants Belleau and Parmer "abused their power to punish Plaintiff while violating the Double Jeopardy rule." (*Id.*, PageID.13–14.)

Thereafter, on October 17, 2024, "Plaintiff received two more class II misconducts" for "interference with administration of rules" and for being "out of place." (*Id.*, PageID.14.) Defendant Shields issued these misconducts "because Plaintiff was in the housing unit dayroom cooking his food during yard time while on [loss of privileges], and because he went to the bathroom to urinate during formal count time." (*Id.*, PageID.14–15.) Plaintiff claims that "because [he] was on [loss of privileges] and had two misconducts pending, []which [Defendant Shields] knew of[], [Defendant Shields] abused [Shields's] power to further punish Plaintiff while subjecting Plaintiff to cruel and unusual punishment by denying him access to the bathroom." (*Id.*, PageID.15.) Plaintiff requested a hearing for "all four misconducts." (*Id.*, PageID.16.)

On October 22, 2024, Plaintiff was transferred from KCF, where he was housed in level II, to ECF, where he was placed in solitary confinement. (*Id.*) Plaintiff states that at that point, he had not been found guilty of the four misconducts discussed above, which had been issued to him at KCF. (*Id.*, PageID.17.)

Subsequently, on October 28, 2024, Plaintiff "received four misconduct hearing reports signed by" Defendants Bromley and Goodspeed. (*Id.*) The "reports stated that Plaintiff refused to participate in the hearing that was held on October 25[], 2024, but Plaintiff had not been asked if he wanted to participate." (*Id.*, PageID.17–18.) Plaintiff states that he was then classified to solitary confinement. (*See id.*, PageID.18.)

On November 14, 2024, Plaintiff gave non-party Corrections Officer Howard "copies of the misconduct appeals . . . to put in the outgoing mailbox." (*Id.*, PageID.18–19.) Plaintiff states that he was supposed to submit the appeals within fifteen days of the hearing date, "but it was not

3

possible to meet this deadline because Plaintiff had to request [an] appeal form on October 28[], 2024," and "wait for" Defendant Bromley or Defendant Goodspeed to send it to Plaintiff. (*Id.*, PageID.19.)

On November 24, 2024, Plaintiff submitted a step I grievance about the above-discussed events, and Defendant Bassett denied the grievance as untimely. (*Id.*, PageID.20–21.)

Plaintiff states that at ECF, he "spent more than 300 days in solitary confinement on 24 hours lockdown,"[3] and "[h]e was not allowed to communicate with family and friends." (*Id.*, PageID.21.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.*, PageID.22–25.) Plaintiff also avers that Defendants Belleau and Parmer "violat[ed] the Double Jeopardy rule." (*Id.*, PageID.14.)[4] Plaintiff seeks monetary damages and declaratory relief. (*Id.*, PageID.26–27.)

---

[3] The Court notes that even giving Plaintiff the benefit of the earliest date mentioned in the complaint—October 15, 2024, which is the date on which Plaintiff alleges he first received two of the four class II misconduct charges at KCF, not the date on which he was placed in solitary confinement at ECF—Plaintiff could not have been in solitary confinement for 300 days on May 1, 2025, the date on which the Court received Plaintiff's complaint. Even if Plaintiff alleged that he was placed in solitary confinement on October 15, 2024, which he does not, 300 days from that date would be August 11, 2025, which is more than three months after Plaintiff filed his complaint.

[4] In Plaintiff's complaint, he specifically identifies the causes of action that he intends to bring in this suit. (*See* Compl., ECF No. 1, PageID.14, 22–25.) Because Plaintiff specifically identifies the causes of action that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims. Moreover, even if, for example, Plaintiff had raised a First Amendment retaliation claim in this case, he would fail to state such a claim because he fails to allege that he engaged in protected conduct prior to any of the actions taken by Defendants. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (setting forth the elements of a First Amendment retaliation claim). Instead, Plaintiff's allegations show that Plaintiff was on loss of privileges, presumably for a prior misconduct conviction, meaning he had lost certain privileges such as use of the dayroom and telephone, when he left his cell, made a phone call, and used the dayroom to cook food, and a couple of days later while still on loss of privileges, during formal count, Plaintiff left the area to use the bathroom. (Compl., ECF No. 1, PageID.13–15.) The Defendants at KCF issued Plaintiff misconduct charges for these actions, and Plaintiff's own allegations show that he took the actions for which he was charged. (*See id.*) Further, although

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

---

Plaintiff alleges that he was subsequently transferred to ECF and placed in solitary confinement at ECF, he does not allege that he engaged in any protected conduct prior to these actions. Under these circumstances, even if Plaintiff had raised a First Amendment retaliation claim, the claim would be subject to dismissal for failure to state a claim.

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**      **Official Capacity Claims**

Plaintiff sues Defendants in their individual and official capacities. (Compl., PageID.2, 5, 7–11.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as declaratory relief. (Compl., ECF No. 1, PageID.26–27.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). In the present action, Plaintiff does not allege any facts to suggest that the named Defendants have any involvement in the present nature of his confinement at ECF. Instead, his allegations *against Defendants* relate solely to past harm, not future risk of harm. As such, Plaintiff fails to allege any facts to show that he seeks prospective declaratory relief.

Therefore, for these reasons, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B. Individual Capacity Claims

#### 1. Double Jeopardy Claims

Plaintiff alleges that Defendants Belleau and Parmer "violat[ed] the Double Jeopardy rule" by charging Plaintiff with two new misconduct charges while he was on the loss of privileges sanction, presumably for a prior misconduct conviction. (Compl., ECF No. 1, PageID.14.)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. However, the Double Jeopardy Clause does not apply to all punishments. The United States Supreme Court has determined that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings." *United States v. Beaty*, 147 F.3d 522, 524 (1998) (emphasis in original) (citation omitted). "The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008) (citations omitted); *cf. Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974) (concluding that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply" (citation omitted)). And, because "[p]rison disciplinary hearings are not part of a criminal prosecution . . . [they] do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994).

Thus, the issuance of two new misconduct charges by Defendants Belleau and Parmer while Plaintiff was on loss of privileges, presumably for a prior misconduct conviction, does not violate the Double Jeopardy Clause. (*See* Compl., ECF No. 1, PageID.14.) Accordingly, any

8

intended Double Jeopardy claims against Defendants Belleau and Parmer will be dismissed for failure to state a claim.[5]

### 2. Eighth Amendment Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights by (i) issuing Plaintiff four new misconduct charges while Plaintiff was already on loss of privileges, presumably for a prior misconduct conviction, (ii) issuing Plaintiff a misconduct charge "because [Plaintiff] went to the bathroom . . . during formal count," which Plaintiff claims "den[ied] him access to the bathroom," and (iii) housing him in solitary confinement for an alleged 300-day period. (Compl., ECF No. 1, PageID.13–16, 22–25.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

---

[5] If Plaintiff had raised a double jeopardy claim against Defendant Shields for the issuance of the other two misconduct charges at KCF, the Court would reach the same conclusion regarding this claim.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As an initial matter, although Plaintiff alleges in a conclusory manner that Defendants Belleau, Parmer, and Shields improperly punished Plaintiff when they issued him four new misconduct charges at KCF while Plaintiff was already on loss of privileges for a prior misconduct conviction, as explained below, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding his receipt of these four new misconduct charges. Specifically, Plaintiff describes Defendants' issuance of the misconduct charges as punishment; however, he alleges no facts to suggest that Defendants acted with an improper intent to punish when they issued the misconduct charges. Indeed, in this case, based on Plaintiff's own allegations in the complaint, he admits that he engaged in the conduct charged in the four misconducts at issue. (*See* Compl., ECF No. 1, PageID.13–15 (admitting that while on loss of privileges, during which prisoners lose certain privileges such as use of the dayroom and telephone, Plaintiff left his cell, made a phone

10

call, and used the dayroom to cook food, and again while on loss of privileges and during formal count, Plaintiff left the area to use the bathroom).) Under these circumstances, Plaintiff fails to allege any facts to show that Defendants' issuance of the four misconduct charges at issue in this case violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

Furthermore, with respect to Plaintiff's allegation that Defendant Shields "den[ied] [Plaintiff] access to the bathroom," in violation of the Eighth Amendment, by issuing Plaintiff an "out of place" misconduct charge on October 17, 2024, "because [Plaintiff] went to the bathroom . . . during formal count" and while Plaintiff was on loss of privileges for a prior misconduct conviction, as explained below, this allegation fails to state an Eighth Amendment claim. (Compl., ECF No. 1, PageID.14–15.) As an initial matter, although Plaintiff claims that he was "den[ied] . . . access to the bathroom," Plaintiff's own allegations show that he in fact went to the bathroom during formal count, not that Plaintiff was denied access. (*Id.*) And, even if Plaintiff had been denied access to the bathroom during formal count, Plaintiff fails to show that this alleged one-time denial resulted in the conditions of his confinement falling beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006). ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (citation omitted)).

Finally, Plaintiff alleges that his detention in solitary confinement for an alleged 300-day period violated his Eighth Amendment rights. (Compl., ECF No. 1, PageID.21.) Plaintiff contends that during this period, he was "on 24 hours lockdown," "he was not allowed to communicate with family and friends," and "he now suffers from depression, anxiety, [and] los[s] of appetite." (*Id.*)

11

As an initial matter, Plaintiff alleges that he was first placed in solitary confinement at ECF. (*See id.*, PageID.16.) Plaintiff alleges no *facts* to suggest that Defendants Belleau, Parmer, and Shields, all of whom are employed at KCF, had any involvement in Plaintiff's detention in solitary confinement at ECF. Plaintiff alleges in a conclusory manner that the issuance of the four misconduct charges at KCF by Defendants Belleau, Parmer, and Shields "caused [Plaintiff] to spend more than 300 days in solitary confinement," however, simply because one event precedes another event does not mean that the individuals involved in the initial event are liable for the subsequent event. Here, Plaintiff fails to allege any facts to show that Defendants Belleau, Parmer, and Shields had any involvement in, or knowledge of, the nature of Plaintiff's confinement at ECF, let alone Plaintiff's detention in solitary confinement at ECF. Similarly, Plaintiff fails to allege any facts to suggest that Defendant Bassett, the grievance coordinator at ECF whose only involvement in this matter was to deny Plaintiff's grievance as untimely, had any involvement in Plaintiff's detention in solitary confinement.

Moreover, as to Defendants Bromley and Goodspeed, Plaintiff's factual allegations suggest that Defendants Bromley and Goodspeed were only involved in Plaintiff's *initial* placement in solitary confinement following Plaintiff's misconduct convictions. (*See id.*, PageID.18.) *Placement* in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society; it is typically insufficient to support an Eighth Amendment claim. *See Hudson*, 503 U.S. at 9. In this case, Plaintiff alleges no facts to suggest that Defendants Bromley and Goodspeed had any involvement in, or knowledge of, Plaintiff's confinement in solitary confinement for the entire, alleged 300-day period. Indeed, besides alleging that Defendants Bromley and Goodspeed were involved in Plaintiff's initial placement in solitary confinement following his misconduct convictions, Plaintiff alleges no facts about any individuals'

involvement in, or knowledge of, the conditions of his confinement for the alleged 300-day period, let alone any facts to suggest that Defendants Bromley and Goodspeed had any knowledge of the conditions of his confinement during this period of time. Under these circumstances, Plaintiff fails to show that Defendants Bromley and Goodspeed were personally involved in the alleged 300-day period in which Plaintiff was detained in solitary confinement. *Cf. Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). The Court does not minimize Plaintiff's experience in solitary confinement, however, he has alleged insufficient facts to hold the named Defendants liable for the conditions of his confinement during the alleged 300-day period.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants will be dismissed.

### 3.    **Fourteenth Amendment Procedural Due Process Claims**

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard

for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

        **a.    Issuance of New Misconducts While on Loss of Privileges for a Prior Misconduct Conviction**

Plaintiff seems to believe that because he was already on loss of privileges, presumably as a result of a prior misconduct conviction, he could not be charged with new misconducts for new violations that occurred during the period of time that he was on loss of privileges, and therefore Plaintiff believes that the issuance of the new misconduct charges by Defendants Belleau, Parmer, and Shields during that period of time violated his due process rights. (*See, e.g.*, Compl., ECF No. 1, PageID.13–16, 22–25.) Plaintiff is mistaken. Based on Plaintiff's own allegations in the complaint, he admits that he engaged in the conduct charged in the four misconducts at issue. (*See id.*, PageID.13–15.) And, there is no due process right not to be charged with new misconducts simply because a prisoner is completing the sanctions imposed for a prior misconduct conviction at the time the new misconducts are issued.

        **b.    Placement in Solitary Confinement Prior to Plaintiff's Misconduct Hearings**

Plaintiff suggests that his due process rights were violated when he was placed in solitary confinement upon his arrival at ECF prior to his misconduct hearings for the four misconduct charges that had been issued to him at KCF. (*See id.*, PageID.16.) As an initial matter, Plaintiff

14

alleges no facts to suggest that any of the named Defendants were involved in his placement in solitary confinement upon arrival at ECF. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Furthermore, the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. As such, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his placement in solitary confinement upon arrival at ECF.

      **c.**  **Misconduct Charges and Subsequent Detention in Solitary Confinement**

Finally, Plaintiff alleges that Defendants Belleau, Parmer, Shields, Bromley, and Goodspeed deprived him of due process with respect to his class II misconduct charges and the related misconduct hearings, as well as with respect to his ability to appeal the misconduct convictions. (*See* Compl., ECF No. 1, PageID.22–25.)

As set forth in *Sandin*, prison misconduct proceedings only implicate a prisoner's liberty interests when the resulting sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87.

Here, Plaintiff was convicted of four class II misconduct charges. (*See* Compl., ECF No. 1, PageID.17.) Plaintiff could not have been denied good time or disciplinary credits as a result of his class II misconduct convictions. *See generally* MDOC Policy Directive 03.03.105 (eff. Aug. 26, 2024). The United States Court of Appeals for the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x

15

271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Furthermore, as to the sanctions that Plaintiff received as a result of the class II misconduct convictions, Plaintiff's complaint is not a model of clarity as to the sanctions that he received. Plaintiff suggests that he was ultimately held in solitary confinement for "300 days"[6] after the misconduct convictions; however, Plaintiff fails to allege sufficient *facts* to show that Defendants were involved in determining Plaintiff's classification status for this entire, alleged 300-day period. (*See* Compl., ECF No. 1, PageID.22–25.) Therefore, as explained below, Plaintiff fails to show that Defendants were involved in any "atypical" and "significant deprivation."

Specifically, Plaintiff alleges that on October 28, 2024, he "received four misconduct hearing reports signed by" Defendants Bromley and Goodspeed, and that Defendants Bromley and Goodspeed "violate[d] Plaintiff's due process by entering pleas without Plaintiff being at the hearing and classifying Plaintiff to solitary confinement." (*Id.*, PageID.17–18.) Plaintiff's factual allegations suggest that Defendants Bromley and Goodspeed were involved only in Plaintiff's *initial* placement in solitary confinement following the misconduct convictions.[7] And, Plaintiff's *initial* placement in solitary confinement following the misconduct convictions does not constitute an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the United States

---

[6] As noted above, even giving Plaintiff the benefit of the earliest date mentioned in the complaint—October 15, 2024, which is the date on which Plaintiff alleges he first received two of the four class II misconduct charges at KCF, not the date on which he was placed in solitary confinement at ECF—Plaintiff could not have been in solitary confinement for 300 days on May 1, 2025, the date on which the Court received Plaintiff's complaint. *See supra* note 3.

[7] Plaintiff alleges no facts to suggest that Defendants Belleau, Parmer, Shields, and Bassett had any involvement in Plaintiff's placement in solitary confinement.

Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant).

Although Plaintiff alleges that he was ultimately held in solitary confinement for an alleged 300-day period, after Plaintiff's allegations about Defendants Bromley's and Goodspeed's involvement in Plaintiff's initial placement and classification to solitary confinement following the misconduct convictions, Plaintiff alleges no further facts about why he continued to be held in solitary confinement for the alleged 300-day period and who was involved in the determination to detain Plaintiff in solitary confinement for this period of time. Instead, without providing any further explanation or attributing the action to any individuals, later in the complaint, Plaintiff simply states that he "spent more than 300 days in solitary confinement." (Compl., ECF No. 1, PageID.21.) The Court does not minimize Plaintiff's experience; however, Plaintiff must allege facts to support his claims. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that [show] what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff alleges no facts to show that any of the named Defendants were involved in the determination to detain him in solitary confinement for the entire, alleged 300-day period. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment due process claims against Defendants regarding his misconduct convictions and detention in solitary confinement.

### d.    Use of the Grievance Procedure

Plaintiff alleges that Defendant Bassett's denial of his grievance as untimely violated his due process rights. (*See* Compl., ECF No. 1, PageID.21.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, Defendant Bassett's denial of Plaintiff's grievance did not deprive Plaintiff of due process.

Accordingly, Defendant Bassett and Plaintiff's claims against Bassett will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court

concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

    A Judgment consistent with this Opinion will be entered.

Dated:     July 25, 2025                              /s/ Jane M. Beckering
                                                                                              Jane M. Beckering
                                                                                              United States District Judge